NATHANIEL B. HARVEY AND TIMOTHY W. TWITCHELL *vs.* HIRAM H. HURLBURT, ORANGE BRITTOL AND JOHN ROBBINS.

A mortgage deed was executed to A & B to secure them for signing a note as surety for the mortgagor.  Afterwards the mortgagor conveyed the mortgaged premises to A and another person, and the deed contained a provision that the grantees should pay off all the incumbrances.  After this A paid the note in which he and B had become surety for the mortgagor.  In an action of ejectment afterwards brought by A & B, the mortgagees, predicated on the mortgage, against the persons in possession of the mortgaged premises, it was held, that, by the conveyance to A and the other grantee, the plaintiffs were fully indemnified from the note which they had signed, and that their claim on the mortgage was discharged, and could not be set up by either of the plaintiffs.

This was an action of *ejectment* in which the plaintiffs claimed title to the demanded premises by virtue of a mortgage deed executed to them by one Samuel D. Brainerd, dated June 20, 1820, to secure them for signing a note to one Mattocks, as surety for Brainerd, for the sum of $54,63, payable on or before the first day of November, 1820.  The deed was conditioned to be void

VVV

ADDISON,
January,
1831.

Harvey et al.
*vs*
Hurlburt et al.

on the payment of the note by Brainerd. It appeared at the trial in the county court, that, subsequent to the date of the mortgage to the plaintiffs, one Meeker had levied an execution against Brainerd on an undivided third part of the premises, subject to the mortgage ; that Meeker had conveyed his title to H. Seymour, and that Seymour had conveyed to *Orange Brittol* and *John Brittol, jun.* ; and that the defendants were in possession of the premises under said deed from Seymour.

The defendants offered in evidence a deed of the same premises from Brainerd to the plaintiff, *Harvey,* and one Scott, subject to said mortgage and other incumbrances, dated October 7, 1820, in which there was this clause : " *which incumbrances, and the demands due on them, the grantees are to pay and discharge in full.*" The defendants also offered in evidence a deed of the same premises from *Harvey* to one Stow, subject to the same incumbrances, dated January 14, 1822, and a quit-claim deed from Stow to the defendant, *Hurlburt,* accompanied with evidence to show that *Harvey* had paid the note mentioned in the mortgage deed from Brainerd to the plaintiffs subsequent to the first day of November, 1820, prior to the date of the deed from *Harvey* to Stow, and that the other plaintiff, *Twitchell,* had no interest in the mortgage. The evidence was objected to by the plaintiffs, but admitted by the court. The court directed a verdict for the defendants on the ground that *Harvey,* having paid the note before he conveyed to Stow, the plaintiffs had no title to the premises.

The plaintiffs also offered evidence tending to show that *John Brittol, jun.* one of the defendants, was in possession of the premises demanded, with a view to recover against him ; which evidence was rejected by the court.

The plaintiffs excepted, &c., and the cause was thereupon removed to this Court.

*Mr. Seymour, for the plaintiffs.*—The parties in this case both claiming under S. D. Brainerd, the only question is, which has the better title from him ; and as the plaintiff's title is prior in the order of time, it follows, that if that is still a valid subsisting title, they are entitled to recover. That the mortgage to plaintiffs was originally valid, is not denied ; and it is contended that the deed from Brainerd to *Harvey* and Scott, of the equity of redemption, did not operate to unite the two estates so as to merge the one in the other The union of the mortgage with the equity of redemption in the same persons would operate as a merger ; but the

mortgage title being in *Harvey* and *Twitchell*, and the equity of <span style="float:right">ADDISON,<br>*January,*<br>1831.</span> redemption in *Harvey* and Scott, the two estates could not amalgamate, but must remain separate and distinct. In this state of <span style="float:right">Harvey et al.<br>*vs.*<br>Hurlburt et al.</span> things, *Harvey* paid the note to Mattocks. This payment did not certainly vacate the mortgage, but the contrary, as it was this very contingency provided against by the deed. And even at this period of the transaction, the two interests could not unite, for the reason already given. If, therefore, the two interests still remained distinct, it was competent for *Harvey* to release or convey his interest in the equity of redemption, reserving his claim under the mortgage to be reimbursed for the amount paid upon the note to Mattocks.

*Bates and Chipman, for the defendants.*—In the first place, it may be remarked, that the case is to be decided in all respects the same as if *Twitchell* and Scott had never been named in any of the conveyances. *Twitchell* was at first a surety with Harvey; but when *Harvey* took the absolute deed of Brainerd, and undertook to pay the demand, and did pay it, *Twitchell* ceased to have any interest whatever in the transaction. As Scott is not a party to the suit, *Harvey* cannot recover upon any supposed right of Scott. But it further appears by *Harvey's* deed to Stow, that Scott must have relinquished his right to *Harvey*; for in that deed, *Harvey* covenants that he is well seized of the premises in his *own right*, except the Mattocks' incumbrance. The question then is, has *Harvey* a legal title to these premises? If he has any title, it must be as the mortgagee of Brainerd in the first deed; and as to this, the defendants contend,

1st. That at the date of *Harvey's* deed to Stow, he had become the sole owner of the incumbrance, and of the premises incumbered, and that in his person the incumbrance was necessarily merged in the absolute title. The unqualified and absolute owner of land, which has formerly been incumbered by mortgages, cannot preserve for future sales or disposition, the land and the several liens as distinct and separate estates. Where they are all owned by the same person the subordinate estates become merged and extinct.

2d. The condition of this mortgage deed was to pay the Mattocks' note. That note constituted all that could in any sense render the mortgage an incumbrance; and when the note was paid and extinguished, the incumbrance of necessity ceased; whatever other rights might accrue between the parties, the lien

ADDISON,
January,
1831.

Harvey et al.
vs.
Hurlburt et al.

on the land was dissolved.   The cases in 6 *Johnson's Chancery Reports* show clearly that when the mortgagee purchases the equity of redemption, the equitable estate, as a general rule, merges in the legal.   And when *Harvey* bought of Brainerd, he had no motive to keep them distinct.   The incumbrance, as to him, sunk. —6 *Johns. Ch. Rep.* 393, Starr vs. *Ellis; do.* 417, James vs. *Johnson.*   At all events the payment of the note extinguished the incumbrance.—18 *Johns.* 7.

PER CURIAM.—The last question which arises from the bill of exceptions, *viz.* whether the action was still pending against *John Brittol,* in whose favor two verdicts had been rendered before the last trial, has not been considered, as the Court are of opinion that the plaintiffs have failed to establish any title against either of the defendants.

The plaintiffs claim under a mortgage deed executed by one Samuel D. Brainerd, to indemnify them from a note which they executed to Samuel Mattocks, as surety for Brainerd, and which *Harvey,* one of the plaintiffs, had paid.   It appears that Brainerd, after the mortgage in October, 1820, conveyed the premises to *Harvey,* one of the plaintiffs, and to one Lewis Scott, and in that deed, after mentioning the incumbrances, and among others, the mortgage to the plaintiffs before mentioned, there is this clause ; " which incumbrances and the demands due " on them, the said *Nathaniel B. Harvey* and Lewis Scott are " to pay and discharge in full."   This, as between Brainerd and *Harvey,* was a full indemnity, and was in fact a payment to *Harvey* of the amount of the note to Mattocks, and laid him and Scott under an obligation to pay the same.   It appears that while *Harvey* was the owner of the premises, either of the whole or a moiety, he did pay to Mattocks the amount of the note.   This payment was a performance of an obligation which he was under, and was a payment of a debt which he and Scott were to pay, in consequence of their receiving the deed from Brainerd, and a fulfilment of the conditions of the mortgage deed.   The claim on the mortgage was then extinguished, and could not be revived or set up again by either of the plaintiffs, as they were thereby fully indemnified from the note which they had signed.

It does not appear what became of the title of Scott to the undivided half of the premises ; but the probability is it was conveyed to *Harvey,* as *Harvey* afterwards, in January, 1822, conveyed the whole premises to Stow, with the usual covenants of seizin

and warranty.  In *Harvey's* deed to Stow he mentions the <span style="float:right">ADDISON,<br>*January,*</span> same incumbrances which were named in the deed from Brainerd to him and Scott ; but Stow conveys to *Hurlburt*, one of the defendants, without naming any incumbrance.  The plaintiffs now contend, that in consequence of this mortgage being mentioned as an incumbrance in *Harvey's* deed to Stow, that it is still an existing incumbrance on the land, and that they can hold the land until *Harvey* is repaid the amount which he paid to Mattocks. But their is no possible foundation for this claim.  If such was *Harvey's* intention when he conveyed to Stow, he cannot carry it into effect.  He cannot revive a mortgage which has been once discharged and satisfied.  The plaintiffs have, therefore, no title by virtue of that mortgage against any person whatever.

The judgement of the county court is therefore affirmed.